## LEGGETT v. AVERY.

1. Where, on the surrender of letters-patent, a disclaimer of a part of the inventions described in them is filed by the patentee in the Patent Office, and reissued letters are granted for the remainder, — *Held*, that, if in a second reissue the disclaimed inventions are embraced, he cannot sustain a bill to enjoin the infringement of them.

2. *Quære*, are reissued letters-patent valid, if they contain any thing which the patentee disclaimed, or in the rejection of which he acquiesced, in order to obtain the original letters?

APPEAL from the Circuit Court of the United States for the District of Kentucky.

The facts are sufficiently stated in the opinion of the court.

*Mr. M. D. Leggett* for the appellants.
*Mr. John E. Hatch, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was a bill in equity filed by the appellants against the appellees for an injunction to restrain the latter from infringing certain letters-patent for an improvement in plows, and for an account of profits and an assessment of damages. The letters-

patent were originally granted to one Matthew G. Slemmons on the ninth day of October, 1860, surrendered and reissued on the twenty-second day of June, 1869, extended for seven years from the ninth day of October, 1874, and again surrendered and reissued on the tenth day of November, 1874. One of the defences made by the defendants was, that the last reissue embraced certain claims for alleged inventions, which had been expressly disclaimed by the patentee as a condition of getting the letters extended, and which are the specific claims which the defendants are charged with infringing. The fact on which the defence is based seems to be well founded. In the original letters, granted in 1860, the only thing claimed was, "the arrangement of the two curved shoulder-beams, A, A, a clevis, B, transverse bar, D, m, slotted adjustable handles, E, E, b, and notched and mortised shovels, C, C, e, in the manner and for the purpose described." The specification commences by saying, "My invention consists in the particular arrangement of the several parts in the manner and for the purpose hereinafter described." Of course this was a claim for a combination of a number of particulars, and was a very narrow patent, for no one would infringe it who did not use all the parts in the combination as described. It is not pretended that the defendants have done so.

But in 1869 the patentee surrendered these letters and obtained a reissue, embracing six different claims, which were as follows : —

"1. The two converging beams A A, each one of which has a shovel-standard, A', formed by bending its rear end, substantially as described.

"2. The converging beams A A, connected together and constructed with curved shovel-standards A' A' upon them, substantially as described.

"3. The union of the front ends of plow-beams, which have their rear ends bent to form shovel-standards, by means of a clevis or device by which the team is hitched to the implement, substantially as described.

"4. The converging plow-beams A A, having shovel-standards A' A' formed on them, in combination with handles F F and handle-supporting braces E E, substantially as described.

"5. In combination with the foregoing, the manner, substantially

as described, of adjusting the handles F F, and securing them to the beams at any desired angle.

"6. Constructing of one piece of metal a plow-beam, A, and a curved shovel-standard A′, with a shoulder d formed on the latter, substantially as described."

The defendants allege that most of these claims were for devices that had long been in public use, and that the patentee never attempted to vindicate his title to them by instituting any suits against those who had used them; and evidence on the subject was introduced which it would be necessary for us to examine, if the case depended on this issue. But early in 1874 the patentee, on behalf of the present complainants and appellants who had purchased the patent, applied for an extension for another seven years. This was opposed by those who were interested in the subject-matter; and the acting commissioner of patents refused to grant the extension unless the patentee would abandon all the claims in the reissued patent of 1869, except the fifth. Thereupon a disclaimer was filed accordingly, and the patent was extended for the fifth claim only, which the defendants have not infringed. This disclaimer was filed on the 5th of October, 1874; and the extension was granted on the ninth of the same month. On the same day, another reissue was applied for, including substantially the claims which had been rejected and disclaimed. The examiner refused to pass the application; but it was persisted in, and finally, on the 10th of November, 1874, the reissue was granted on which the present suit was brought. This reissue contains the following claims: —

"1. Two diverging beams, A A, that have their rear ends bent to form shovel-standards, the said beams being fastened rigidly together, substantially as described, at and springing from the point of attachment for the draft.

"2. Two diverging beams, A A, that have their rear ends bent to form shovel-standards, and their front ends fastened rigidly together and merged into a device, substantially as described, whereby the plow may be attached to the draft.

"3. The combination, substantially as described, with the two plow-beams A A, of the handles F F, and adjustable handle-supporting braces E E."

It is obvious, on inspection, that the first and second of these claims are for substantially the same inventions which were disclaimed before the extension, and are for different inventions from that which was included in and secured by the letters-patent as extended.   The court below deemed this, amongst other things, a fatal objection to the validity of the reissued letters-patent.   We agree with the Circuit Court.   We think it was a manifest error of the commissioner, in the reissue, to allow to the patentee a claim for an invention different from that which was described in the surrendered letters, and which he had thus expressly disclaimed.   The pretence that an " error had arisen by inadvertence, accident, or mistake," within the meaning of the patent law, was too bald for consideration. The very question of the validity of these claims had just been considered and decided with the acquiescence and the express disclaimer of the patentee.   If, in any case, where an applicant for letters-patent, in order to obtain the issue thereof, disclaims a particular invention, or acquiesces in the rejection of a claim thereto, a reissue containing such claim is valid (which we greatly doubt), it certainly cannot be sustained in this case. The allowance of claims once formally abandoned by the applicant, in order to get his letters-patent through, is the occasion of immense frauds against the public.   It not unfrequently happens that, after an application has been carefully examined and compared with previous inventions, and after the claims which such an examination renders admissible have been settled with the acquiescence of the applicant, he, or his assignee, when the investigation is forgotten and perhaps new officers have been appointed, comes back to the Patent Office, and, under the pretence of inadvertence and mistake in the first specification, gets inserted into reissued letters all that had been previously rejected.   In this manner, without an appeal, he gets the first decision of the office reversed, steals a march on the public, and on those who before opposed his pretensions (if, indeed, the latter have not been silenced by purchase), and procures a valuable monopoly to which he has not the slightest title.   We have more than once expressed our disapprobation of this practice.   As before remarked, we consider it extremely doubtful whether reissued letters can be sus-

tained in any case where they contain claims that have once been formally disclaimed by the patentee, or rejected with his acquiescence, and he has consented to such rejection in order to obtain his letters-patent. Under such circumstances, the rejection of the claim can in no just sense be regarded as a matter of inadvertence or mistake. Even though it was such, the applicant should seem to be estopped from setting it up on an application for a reissue.

*Decree affirmed.*

Mr. Justice Harlan did not sit in this case.