UNION METALLIC CARTRIDGE CO. *v.* UNITED STATES CARTRIDGE CO.

*(Circuit Court, D. Massachusetts. May 25, 1881.)*

**1. PATENT—RE-ISSUE—DISCLAIMER OF AMENDED DESCRIPTION—ESTOPPEL—EQUIVALENT.**

Where an inventor inserts a description of a modified or improved form in an application for re-issue, and is required, by the commissioner of patents, to disclaim this description as a condition precedent to granting of the re-issue, *held,* that he is not estopped from enjoining the use of machines containing such modification or improvement.

The admission or disclaimer in such case is not of a fact of invention, but of the propriety of inserting a certain clause in the descriptive part of the specification.

If the patentee's invention and his patent rightly included a certain form as an equivalent, it was a mere nullity (like an admission of law) to confess that it did not include it.

*Leggett* v. *Avery,* 101 U. S. 256, as to the effect of an admission by patentee, construed.

**2. SAME — MECHANISM FOR HEADING METALLIC CARTRIDGE SHELLS—INFRINGEMENT.**

Complainant's machine, in which the shells are carried through a die or a mandrel, and both die and mandrel are moved forward together, forcing the closed protruding end of the shell against a bunter, forming a flange on it, *held,* infringed by defendant's machine, in which the die is stationary, and the bunter advances after the mandrel has carried the shell into position.

In Equity.

*Causten Browne* and *Charles F. Blake*, for complainants.

*Benj. F. Butler* and *J. J. McDavitt*, for defendants.

LOWELL, C. J. Judge Shepley decided that the patent in suit, for heading cartridge shells, re-issued to Ethan Allen, the inventor, in 1865, No. 1,948, and extended to his widow and executrix in 1874, and by her assigned to the plaintiff corporation, was valid, and he ordered an injunction and an account. 11 O. G. 1113. The accounting was delayed by the discovery that certain machines were used by the defendants which had not been brought into the case originally, and a serious question was made, and fully argued before me, as to whether they were within the scope of the injunction. I held that those machines were so different from the machines enjoined that I could not properly deal with them on a motion for attachment, and required the complainants to proceed by bill if they desired to enjoin them.

Afterwards, a petition for rehearing of the cause was filed, and the parties agreed that a rehearing should be had, but that it should not delay the accounting before the master.

In May, 1870, the master's report having been filed, the exceptions to it were argued at length for three days before Mr. Justice Clifford and me. At the same time it was ordered that the testimony upon the rehearing should be closed by a certain day in August, 1880, in order that we might hear the case before the October term at Washington. An argument upon the rehearing was made for two days in September, before the same judges. The court gave leave to the parties to file further arguments, in print, by December, Mr. Justice Clifford saying that he should not be able to take up the case before the vacation at Christmas. Before the briefs were filed Mr. Justice Clifford unfortunately became unable to hear the case, and the parties agreed to argue it orally before me. Afterwards they filed printed arguments instead. This was, perhaps, the last case argued by our accomplished friend, the late Charles F. Blake. The arguments are now complete on all points. It has become my duty to decide,

under the disadvantages resulting from these delays, and from the great loss of the assistance of the presiding justice— (1) Whether the original decree shall be reversed by reason of facts or arguments adduced at the rehearing; (2) if not, whether the master's report of profits shall be confirmed or modified. Allen's original patent described a machine organized to move a "die" against a "bunter," and by their contact to form a flange or head upon the metallic cartridge, which was carried by the die. The defendant's machines brought a movable bunter against a fixed die. This was an improved form of the machine, and was, perhaps, a patentable improvement; but it was the same machine, and was an undoubted infringement. This improvement was invented by Allen himself, but after he had obtained his patent, and when he asked for a re-issue, he inserted in his description of the mechanism this modified and improved form. The commissioner required him to disclaim this part of his description as a condition precedent to granting the re-issue. Judge Shepley held that the disclaimer did not prevent the patentee from enjoining the use of machines having this improvement.

It is now argued, and certainly with much force, that *Leggett* v. *Avery*, 101 U. S. 256, holds the patentee to this disclaimer, as an estoppel. I appreciate the argument, but do not consider myself bound to reverse Judge Shepley's decision, which I should not feel at liberty to do unless my mind were entirely satisfied that he was wrong.

No one can doubt that if a patentee obtains a patent upon his solemn admission of certain facts, he shall never thereafter be permitted to controvert them. This is *Leggett* v.*Avery*. Judge Shepley, though giving his opinion before that case was decided, could not have overlooked this point. I understand him to decide that the admission in this case was not of a fact of invention, but of the propriety of inserting a certain clause in the descriptive part of the specification; and if this were not so, still, if the patentee's invention and his patent rightly included this form, as an equivalent, it was a mere nullity, like an admission of law, to confess that it did not

include it.  This is the idea shortly expressed by Judge Shepley, and I do not see any necessary conflict between it and the decision of the supreme court.

The newly-discovered evidence, tending to show that one Goldmark invented a similar machine before Allen's invention, does not satisfy me that he had reached a practical result earlier than the actual time of the Allen invention.  Mr. Justice Clifford intimated at the trial that it had not satisfied him.

There was some evidence before Judge Shepley that the defendants had bought five machines of the former owners of the patent, and he said:

"If they have only repaired and perfected these machines the use of these machines is not an infringement.  But the purchase of these machines would not, as contended by the defendants, authorize the use of five machines embracing the patented invention, unless they are the identical machines so purchased.  The facts with regard to the extent of the infringement can only be determined on the coming in of the master's report.  The injunction will be so modified as not to enjoin the use of the original five machines used by the defendants until the coming in of the master's report."  11 O. G. 1113.

At this hearing the evidence concerning these five machines is much more complete than it was at the former trial.  It is proved to my satisfaction that Forehand and Wadsworth were sons-in-law and partners of Ethan Allen, having an interest of one-third; that they bought of him one-third of this patent; that under the name and as surviving partners of Ethan Allen & Co. they conveyed all their right in the patent to the complainants in 1871, by an indenture or bipartite agreement containing this stipulation:

"The parties of the first part [Ethan Allen & Co.] hereby agree to sell, transfer, and assign all their right, title, and interest in a patent for heading cartridge shells to the parties of the second part, for the sum of $7,500.  The parties of the first part reserve to themselves the right to manufacture machines under said patent, and to have the use of the same, without paying royalty thereon, but not to dispose of any machine, or machines, to any other party, without the consent of the party of the second part, in writing."

After this assignment was made, Forehand & Wadsworth sold out all their machinery, tools, and fixtures to the defend-

ants, and, among other things, sold these five machines. It is testified that they were not supposed to be of any value, and they were not used by the defendants, but remained in their lumber-room, as I understand, until after this suit was brought. Forehand swears that he notified the defendants' agent, who conducted the negotiation on their part, that he doubted whether he had any right to sell them these five machines.

It seems, then, that the defendants, though they bought the five machines of persons who themselves had a right to use them, obtained no such right. This disposes of the nice point of law as to the measure of damages, in the use of five new machines, by a person who had a right to use five old ones; as well as of the deduction of about $4,000, which the master reported as an alternative finding, if it should be held that no profits made by the use of the five machines themselves were to be included in the decree.

The ingenious argument, from the dates and contents of written papers, to prove that the commissioner of patents must have been deceived and defrauded concerning the state of the title when he granted the extension, needs the support of actual evidence of fraud.

I have considered all the other points presented, but do not find it necessary to refer to them in detail. I do not find that either the original decree or the master's report has been successfully assailed, and I affirm the finding of profits as assessed at $40,367.26.

Decree for the complainants.