### WESTINGHOUSE ELECTRIC & MFG. CO. v. STANLEY ELECTRIC MFG. CO.

(Circuit Court, D. Massachusetts. May 12, 1902.)

#### No. 1,461.

1. PATENTS—REISSUES—MISTAKE AUTHORIZING.

A mistake as to the meaning of a disclaimer limiting the scope of a patent, which is deliberately made to meet a requirement of the patent office, and which does meet such requirement, and thereby avoids an interference, is not a mistake or inadvertence, within the meaning of Rev. St. § 4916, which may be corrected by a reissue with such disclaimer omitted.

2. SAME—REVIEW BY COURTS.

The courts have power to review the action of the commissioner of patents in granting a reissue on the ground of inadvertence, accident, or mistake, where there is manifest error upon the record.

3. SAME—VALIDITY.

The Gaulard & Gibbs reissued patent No. 11,836 (original No. 351,589) for a system of electrical distribution is void because not authorized by the statute governing reissues.

In Equity. Suit for infringement of reissued letters patent No. 11,836, issued June 6, 1900, on original No. 351,589, granted to Lucien Gaulard and John D. Gibbs for a system of electrical distribution. On demurrer to bill.

Kerr, Page & Cooper and William K. Richardson, for complainant.
Mitchell, Bartlett & Brownell and M. B. Philipp, for defendant.

COLT, Circuit Judge. This bill is brought on reissued letters patent No. 11,836, dated June 26, 1900, granted to the complainant as assignee of Gaulard & Gibbs. The defendant has demurred to the bill. The question presented by the demurrer is whether, on the face of the bill and annexed papers, the reissue is valid under the statute governing reissues (Rev. St. § 4916).

In the reissue the disclaimer of the original patent is omitted, and another disclaimer inserted. In other respects the specification and

claims of both the original patent and the reissue are identical. The original disclaimer restricted the scope of the patent. The purpose of the reissue was to take away this restriction, and to leave the patent as it would have stood originally if no disclaimer had been made. The disclaimer in the original patent was as follows:

"We do not herein claim the connection of the converters in the line in any other arrangement than we have illustrated in the drawings."

The disclaimer in the reissue is as follows:

"The connection of the converters in the line, except by their high-tension members, which is the arrangement illustrated in the drawings, is not claimed herein."

The first disclaimer, as understood by the patent office and interpreted by the circuit court in the case of Westinghouse Electric Co. v. Sun Electric Co., 35 Fed. 899, limited the patent to the arrangement of converters in series. The second disclaimer imposes no limitation on the arrangement of converters,—whether in series, multiple arc, or otherwise; in other words, it allows the patent to stand for a system of electrical distribution, regardless of the arrangement of the converters.

It appears from the affidavits of the attorneys for the patentees that the alleged mistake consisted in their belief at the time that the first disclaimer meant the same thing as the second disclaimer. Mr. Pope, one of the attorneys, says in his affidavit:

"After stating to him [the examiner] that I had received the letter of September 30th, I asked him to pass the application to issue. In reply he told me that there would have to be an interference with another case or cases involving the distribution of electricity by means of converters arranged in multiple arc. I protested against this, stating that Gaulard & Gibbs had made no such claim; that their invention did not consist in any particular arrangement of converters with reference to each other, but that it did consist in the use of a reducing converter, and that I was quite willing to make any disclaimer or amendment which would more clearly bring that idea out; that the use of a reducing converter, whether singly or in multiple arc, or in a series, or otherwise, was the invention that Gaulard & Gibbs were entitled to have the use of; and that there was no ground for interference between their claims and any claim for a mere relative arrangement of converters. He then said, in substance, that the interference could be avoided only by the insertion of a proper disclaimer, and added, 'But I know you will not be willing to do it.' I replied, in substance, 'What form of disclaimer do you suggest?' He then wrote out a draft of an amendment which he said would meet his views, and submitted it to me. It contained a form of words disclaiming the use of converters in multiple arc. As I was unwilling to disclaim in behalf of my clients a subject-matter which did not constitute their invention, and which they had never sought to claim, and which, moreover, would permit others to use their invention by the simple expedient of employing reducing converters in multiple arc, I refused to accept his suggestion. I then told him, in substance, that I would try to prepare an amendment that I would be willing to make. Then Major Hopkins and I retired, and after consultation we sought to draft an amendment which should distinguish between the invention itself and mere methods of applying it to use. The result was the amendment of October 7, 1886, which was filed on the same afternoon. I don't recollect and don't think that any discussion took place as to its meaning. Our purpose in preparing the amendment was to define the invention as being limited to the connection of converters in the line by means of their high-tension member or converter, which is the arrangement described in the

specification, and the arrangement which is illustrated in all three figures of the drawings of the patent, and thereby differentiate from mere methods of arranging the converters with relation to each other. It never occurred to me that this amendment could be construed to limit the invention to the use of converters in series, and license the public to use converters in multiple."

The affidavit of Mr. Hopkins, the other attorney, merely corroborates Mr. Pope.

In reply to these affidavits, the examiner says:

"From all this it appears that there was but one purpose in the mind of the examiner, and that was to declare an interference precisely as indicated in the official letter of September 30th, unless the necessity therefor was avoided by a disclaimer of the arrangement of converters in multiple arc. * * * There is no indication that he [the examiner] ever waivered in this purpose for a moment, and the form of disclaimer drawn by him was directed to this point. * * * If the disclaimer was intended to have the meaning that is now ascribed to it, it should have been explained to the examiner, so that he might have proceeded to put the case in interference, but no explanation was offered. The proposition that, under a positive requirement for a particular disclaimer, the examiner accepted a disclaimer of something entirely different, having in fact no relation to the requirement, as meeting his views, is beyond credence, and wholly unreasonable. The filing of the disclaimer, 'in view of official suggestion,' after careful and deliberate consultation between these affiants [the attorneys], men of great learning, wide reputation, and long experience in conducting applications for patents, is a sufficient guaranty that there was neither inadvertence, accident, nor mistake, but, instead, the action was carefully considered and deliberately executed. The only mistake, if there was one, was in the expectation that the examiner would accept a disclaimer with a meaning totally unlike his requirement as satisfactory; and this is not a mistake in a statutory sense, that can be corrected by reissue, since it was the result of a deliberate intention."

From these affidavits, it appears that the first disclaimer was made under the following circumstances: The examiner notified the attorneys for the patentees that an interference could be avoided only by a disclaimer of the arrangement of converters in multiple arc. Thereupon the attorneys visited the examiner, and endeavored to convince him that the Gaulard & Gibbs invention did not consist in any particular arrangement of converters with reference to each other, but in the reducing converter. The examiner still insisted that an interference could be avoided only by the insertion of a proper disclaimer. The examiner wrote a form of disclaimer, which the attorneys were unwilling to accept. The attorneys then retired, and, after consultation, drafted the first disclaimer, which was submitted to the examiner without discussion, and accepted by him, and as a result the patent was immediately passed to issue. It will be observed that the attorneys do not say that the first disclaimer was inadvertently substituted in place of the second disclaimer, or that it was filed hurriedly, or that the language was not deliberately chosen; but, on the contrary, it seems that it was drawn with care and deliberation.

We have presented, then, on the face of these papers, this proposition: Is a mistake as to the meaning of a disclaimer which is deliberately made to meet a requirement of the patent office, and which does meet such requirement, and thereby avoids an interference, a mistake inadvertently committed, within the meaning of section 4916?

I am of the opinion that it is not, and therefore that the commissioner exceeded his powers in granting this reissue. Where patentees obtain their patent by making a disclaimer which limits its scope, in obedience to a requirement of the patent office, they should not be permitted subsequently to say that it was filed by mistake; the mistake being that they understood it to mean something different from what the examiner understood it to mean. Such a mistake is not a bona fide one, because by means of it they deceived the patent office, and thereby obtained the issuance of the patent. It would be laying down a dangerous doctrine to hold that, having obtained their patent by an acquiescence in the condition imposed by the patent office, the patentees could then turn around and obtain a reissue with the condition eliminated, on the ground that they did not intend at the time to comply with the demand of the patent office. Under such circumstances, the patentees must be presumed to have intended the legal consequences of their own deliberate act, upon the good faith of which the patent office issued the patent; and any purpose, intent, belief, mental reservation, expectation, or hope that the disclaimer meant something different from what the patent office understood it to mean, and its language imports, cannot be held to be a mistake inadvertently committed, which may be corrected by a reissue. The patentees are estopped from setting up such a mistake on an application for a reissue.

In Leggett v. Avery, Mr. Justice Bradley, speaking for the court, said.

"We consider it extremely doubtful whether reissued letters can be sustained in any case where they contain claims that have once been formally disclaimed by the patentee, or rejected with his acquiescence, and he has consented to such rejection in order to obtain his letters patent. Under such circumstances, the rejection of the claim can in no just sense be regarded as a matter of inadvertence or mistake. Even though it was such, the applicant should seem to be estopped from setting it up on an application for a reissue." 101 U. S. 256, 259, 260, 25 L. Ed. 865.

The power of this court to review the decision of the commissioner upon the question of inadvertence, accident, or mistake, where there is manifest error upon the record, has always been recognized. Leggett v. Avery, 101 U. S. 256, 259, 25 L. Ed. 865; Mahn v. Harwood, 112 U. S. 354, 359, 6 Sup. Ct. 451, 28 L. Ed. 665; Topliff v. Topliff, 145 U. S. 156, 171, 12 Sup. Ct. 825, 36 L. Ed. 658; Hobbs v. Beach, 180 U. S. 383, 395, 21 Sup. Ct. 409, 45 L. Ed. 586.

Demurrer sustained; bill to be dismissed, with costs.