## PECK *v.* COLLINS.

1. Under the patent laws in force in 1866, letters-patent became absolutely void on the surrender of them.

2. The fifty-third section of the act of July 8, 1870, c. 230 (16 Stat. 205; Rev. Stat., sect. 4916), declares that the surrender "shall take effect upon the issue of the amended patent." *Semble,* that the effect of an adverse decision on the title of the patentee to the invention would be as fatal to the original letters as to his right to a reissue.

ERROR to the Court of Appeals of the State of New York. The facts are stated in the opinion of the court.

*Mr. Alexander D. Wales* for the plaintiff in error.
*Mr. M. M. Waters, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This writ of error is brought to review a judgment of the Court of Appeals of the State of New York involving the construction and effect of certain proceedings under the laws of the United States relating to letters-patent for inventions. On the 25th of October, 1865, one Byron Mudge obtained letters-patent for an improved mode of sinking wells. In January, 1866, he assigned to Preston R. Peck and George W. Peck each an undivided quarter-of the patent. On the 5th of March, 1866, Mudge surrendered his patent, and applied for a reissue, and at the same time asked that an interference should be declared between him and one James Suggett, who had obtained two patents relating to the same matter, one in March, 1864, and the other in February, 1866. An interference was accordingly declared, and the application for reissue was, of course, suspended. The interference also embraced the application of one Nelson W. Green for a patent, then pending. This interference case was pending before the Patent Office and the Supreme Court of the District of Columbia, to which it was finally appealed, until January, 1868, when a decision was reached adverse to Mudge's application for a reissue, sustaining Suggett's patent, and granting a patent to Green. The effect of these proceedings and of this decision upon Mudge's patent was the matter passed upon by the Court of Appeals.

That court held that the patent had thereby become value-less and void for any purpose, except perhaps as it might be ancillary to a bill in equity under sect. 4915 .of the Revised Statutes of the United States.

The materiality of this decision to that of the case arose from the following facts : On the 24th of April, 1866, after Mudge had surrendered his patent for a reissue and had obtained a declaration of interference, as before stated, he and the two Pecks entered into an agreement with Collins, the defendant in error, to sell to him, for the price of $4,000, one-fourth of the patent, and to give him a deed therefor whenever he should call for it. Collins paid the Pecks their portion of the purchase-money in advance by delivering to them two 7–30 United States bonds for $1,000 each. On the 28th of April, 1866, George W. Peck entered into a further agreement with Collins to convey to him, for the price of $1,500, three thirty-seconds more of the patent, and to give a deed therefor when called upon for that purpose. Collins gave his note for the last-named sum.

As these contracts were made in ignorance of the effect of a surrender of the patent for a reissue, they were afterwards conditionally revoked by returning the consideration money and note to Collins, upon the following stipulations respectively. On the 11th of June, 1866, Collins and George W. Peck executed an agreement of which the following is a copy, namely :

" Articles of agreement made this 11th day of June, 1866, between Truman D. Collins, of Cortland, N. Y., of the first part, and George W. Peck, of Cortland, N. Y., of the second part, are as follows : —

" Whereas the said Peck did, by a contract bearing date April 28th, 1866, bind himself, in consideration of the sum of fifteen hundred dollars, which sum was then paid to said Peck, to deed to said Collins an undivided three thirty-second part of a patent-right entitled a new mode of sinking wells ; and whereas said contract was given after the letters-patent had been surrendered up for a reissue, and in ignorance of the fact that under certain circumstances the letters would not be returned to the owners of said patent; and whereas the said Peck desires a release from his obligations under the said contract in case he shall not be enabled to fulfil such obligations :

"Now this agreement witnesseth, that the said Collins, in consideration of the restoration of the said fifteen hundred dollars, agrees to release the said Peck from all obligations he has incurred under said contract, provided said Peck shall not be enabled at any time to fulfil the terms and conditions of said contract. And the said Collins further agrees to pay all that portion of the expenses of the application for a reissue which have been incurred, or which may be hereafter incurred, which it shall be incumbent on said Peck to pay as an owner of said patent, as stated in said patent, viz. a three thirty-second part. The said Collins further agrees to pay to the said Peck the sum of fifteen hundred dollars when the said Peck shall notify him of his readiness to fulfil the said contract by deeding to said Collins his interest in said patent or any reissue which may be granted under said application.

"T. D. COLLINS.<br>"G. W. PECK."

On the 6th of July, 1866, Collins, on receiving from the two Pecks the two 7–30 bonds which he had delivered to them, gave them the following receipt and agreement, namely: —

"Received July 6th, 1866, of Preston R. Peck and G. W. Peck, two thousand (2,000) dollars in 7–30 bonds, said bonds to be returned to Preston R. Peck and G. W. Peck as soon as Byron Mudge succeeds in getting a reissue of a patent for putting down wells, now in the Patent Office, or providing the old patent is returned; but if said patent is not reissued or returned, then T. D. Collins is to keep the bonds and surrender his article he has for the purchase of an interest in said patent.

"T. D. COLLINS."

Preston R. Peck assigned all his interest in this agreement to George W. Peck.

After the application of Mudge for the reissue of the patent had been refused, and a final adjudication had been made against his claim and in favor of Suggett and Green, the attorney of G. W. Peck, in some way which does not appear, got possession of the original patent, and Peck tendered himself ready to perform the conditions of the last two agreements, and demanded payment or return of the sums mentioned therein, to wit, the $2,000 and the $1,500. This being refused by Collins, the present suit was brought to recover the money.

The judge who tried the cause nonsuited the plaintiff upon the following view of the case, as stated in the bill of exceptions, namely : " I am inclined to think that I ought to nonsuit the plaintiff for the reason that the surrender of this patent by the patentee operated as an extinguishment of that patent. That certainly is within the reasoning of Judge Nelson in the case in Black's Reports, — although that case is not precisely in point and in accordance with the apparent and real intent of the parties when a surrender is made, and if such surrender does not absolutely and unqualifiedly extinguish the patent, — and it seems to me that there should be some act of the department indicating an intention to send that patent back into the world as a valid patent. There should be a definite act of the department indicating an intention that it should remain in force, still having life and vitality."

The plaintiff excepted, and the cause was taken by appeal to the Supreme Court of New York in General Term, and thence to the Court of Appeals, by both of which courts the judgment was affirmed. The Court of Appeals construed the two contracts to mean by a *return* of the old patent, a return of said patent clothed with the same force and validity which it had before it was surrendered for a reissue ; and held that the effect and operation of the refusal of a reissue, and the decision against Mudge on the interference, was to destroy such force and validity. The first question for us to decide is, whether this decision as to the effect of the surrender, and the refusal to reissue the patent, was or was not erroneous. If it was not, we are relieved from an examination of any other question in the case. And on this point we have very little embarrassment. We think that the Court of Appeals was right in deciding that by the surrender of Mudge's patent for a reissue, the interference declared thereon, the decision against Mudge, and the subsequent refusal of a reissue of his patent, said patent became destitute of validity and absolutely void.

It was decided by this court in the case of *Moffitt* v. *Garr* (1 Black, 273), that the surrender of a patent under the act extinguishes it. That was an action to recover damages for

an infringement. Whilst the action was pending the patent was surrendered, and this fact was pleaded as a bar to the further prosecution of the suit. The averment of the plea was " that since the commencement, &c., the said Moffitt surrendered to the United States the patent before that time issued to him, and for the alleged infringement of which this suit is brought." This plea was sustained on demurrer, and judgment given for the defendant. The judgment was affirmed by this court after argument by able counsel. Mr. Justice Nelson, in delivering the opinion of the court, said : " The point in the case is, whether or not the patentee may maintain a suit on the surrendered patent instituted before the surrender, if he has not availed himself of the whole of the provision, and taken out a reissue of his patent with an amended specification. The construction given to this section, so far as we know, and the practice under it, in case of a surrender and reissue, are, that the pending suits fall with the surrender. A surrender of the patent to the commissioner, within the sense of the provision, means an act which, in judgment of law, extinguishes the patent. It is a legal cancellation of it, and hence [it] can no more be the foundation for the assertion of a right after the surrender, than could an act of Congress which has been repealed."

Since the decision of this case it has been uniformly held that if a reissue is granted, the patentee has no rights except such as grow out of the reissued patent. He has none under the original. That is extinguished. And, although for the purpose of fixing a date to the title in a question of priority, and of limiting the period for which the patent is to run, the date of the original patent is important; no damages can be recovered for any acts of infringement committed prior to the reissue.

It seems to us equally clear, that as the law stood when that decision was made, and as it continued to stand in 1866, when the surrender of Mudge's patent took place, a patent surrendered for reissue was cancelled in law as well when the application was rejected as when it was granted. The patentee was in the same situation as he would have been if his original application for a patent had been rejected. The law declares

in terms, that " the specifications and claim in every such case shall be subject to revision and restriction in the same manner as original applications are." Act of March 3, 1837, c. 45, sect. 8, 5 Stat. 193; July 8, 1870, c. 230, sect. 53, 16 Stat. 205; Rev. Stat., sect. 4916. The question of his right to any patent at all was opened anew, the same as upon an original application for a patent. Surrender of the patent was an abandonment of it, and the applicant for reissue took upon himself the risk of getting a reissue or of losing all. A failure upon the merits, in a contest with other claimants, only gave additional force to the legal effect of the surrender.

Since the surrender of the patent in this case the patent laws have undergone a general revision by the act of July 8, 1870, c. 230. In the fifty-third section of that act (being the section relating to the surrender and reissue of patents), a new clause was introduced, declaring that the surrender " shall take effect upon the issue of the amended patent; " and this clause is retained in sect. 4916 of the Revised Statutes. What may be the effect of this provision in cases where a reissue is refused, it is not necessary now to decide. Possibly it may be to enable the applicant to have a return of his original patent if a reissue is refused on some formal or other ground which does not affect his original claim. But if his title to the invention is disputed and adjudged against him, it would still seem that the effect of such a decision should be as fatal to his original patent as to his right to a reissue.

We find no error in the record.

*Judgment affirmed.*