FRANKLIN & CO. v. ILLINOIS MOULDING CO. et al.

(Circuit Court, N. D. Illinois, N. D. February 23, 1904.)

No. 26,358.

**1. PATENTS—EFFECT OF SURRENDER FOR REISSUE.**

A patentee cannot claim rights under a patent which he has surrendered to obtain a reissue.

**2. SAME—REISSUE—SCOPE.**

A reissue patent must be for the same invention as the original patent, and cannot include a feature which was withdrawn on the original application to meet a requirement of the Patent Office, or in the rejection of which by the Patent Office the applicant acquiesced.

**3. SAME—VALIDITY OF REISSUE—MACHINE FOR ORNAMENTING PICTURE FRAMES.**

The Adams second reissue patent, No. 11,980 (original No. 642,059), for a machine for mounting ornamental composition directly upon circular picture frames, claims 11 to 18, inclusive, are void as covering matters not included in the original patent.

In Equity. Suit for infringement of patents.

W. R. Rummler, for plaintiff.

Chas. G. Page, for defendants.

KOHLSAAT, District Judge. Complainant brings this suit to restrain infringement of surrendered Adams patent No. 642,059 for a "machine for mounting ornamental composition directly upon circular picture frames," granted January 30, 1900, and applied for November 18, 1898; also a surrendered reissue thereof granted on October 28, 1901, and a second reissue thereof on April 8, 1902. Complainant cannot claim rights under the surrendered patent and first reissue. Reedy v. Scott, 10 Am. & Eng. Pat. Cases, 133; Peck v. Collins, 103 U. S. 660, 26 L. Ed. 512. Complainant appears to concede this rule, and confines the relief sought to claims 11 to 18, inclusive, of the second reissue patent No. 11,980, aforesaid.

The original patent was granted after considerable amendment required by the Patent Office, and calls for, among other things, two pivotally mounted guides, one projecting from the central portion of each crosspiece, "which serve to limit the lateral movement of the picture frame." The specifications (lines 25 to 39) read as follows, viz.: "A guide or stop, irregular, or even an ordinary oval picture frame, would not be sufficient to serve as a guide in the hands of a skilled workman. Two guides or stops placed substantially on line with and above the axial center of large feed roller, D, after many experiments, attain the very highest results in practice in covering with composition both round and long oval frames," etc. In the argument before the examiner it is stated: "The two roller guides or stops are absolutely necessary, and it is absolutely necessary that they be disposed as in the applicant's machine, for the reasons already stated in the amendment." These changes and declarations were brought out by the examiner's references to the Groble patent, No. 430,576, and the British patent to Huppertz, No. 7,163 (1891). From a comparison of these patents with the proceedings in the Patent Office as shown by the file wrapper,

¶ 1. See Patents, vol. 38, Cent. Dig. § 204.

and with the claims of the original patent, defendants' expert testifies that the only difference between said original patent and said Groble patent lay in the difference between the two roller guides of the complainant's original patent, located in front of and behind the rolls and in the same vertical plane therewith, and Groble's two guides, which were located slightly at one side of his rolls, and that even this difference was still further reduced by the citation by the Patent Office of the said Huppertz patent. It should be noted here that in Adams' second amendment to his original application he provided, in claim one thereof, for "a stop adjacent to the wheel and in a line with the axis of the shaft." This claim was rejected by the examiner as describing an inoperative device. The examiner bases his rejection thereof in part upon the citation above set out from argument of Adams' counsel on the application for his first amendment. In this action the applicant acquiesced.

On October 22, 1901, said original patent was surrendered, and reissued letters patent numbered 11,940 were granted to Samuel Franklin, as assignee of Adams. This reissue patent embraces ten claims, all of which proceed upon the use of two guides. This, it will be seen, transpired about 22 months subsequent to the granting of the original patent. Subsequently, and on April 8, 1902, Franklin surrendered said first reissued patent, and was granted a second reissue patent, No. 11,980, as aforesaid, embracing 18 claims, of which claims 11 to 18, inclusive, are now involved. In these 8 claims complainant, for the first time, sets out a single guide, in language which would seem to cover defendants' device.

There are other matters sought to be included in the reissue, but it seems important to first dispose of the bill as relating to the question of guides. The device employed by the defendant was first used by the corporation defendant in its factory at Chicago, March 8, 1900, or a little more than a month after the granting of complainant's said first patent, and was therefore in use by said defendant two years and one month prior to the second reissue aforesaid, and prior to complainant's first assertion of a claim to be the patentee thereof.

The main defenses urged are (1) that the device is old in the prior art; (2) that it was not involved in the original patent; (3) that complainant is estopped by laches.

These grounds of defense will be considered only with reference to the matter of guides. The prior art relied on by the defendant is embraced practically within the claims of the above-named Groble-Huppertz patents and of the Brausil patent. In his communication to Adams of December 20, 1898, the commissioner of patents sends to Adams the finding of the examiner, in which he states that Adams' assertion that frames have heretofore been ornamented "by hand" must be modified in view of the prior art, citing the Groble and Huppertz patents, and that by the same test the original claims are wholly devoid of patentable novelty. Therefore the claims were rejected. In a like communication of June 26, 1899, the examiner is quoted as follows, viz.:

"Case considered as amended on the 15th inst. The claim is held to lack patentable novelty, in view of patents already of record in the case. The only
128 F.—4

appreciable difference between applicant's construction and that shown in the reference resides in the fact that his guides or stops are revoluable on their vertical axis, while those in the Groble construction do not revolve. This feature of the revolubility of the said guide is, however, not only not embraced in the claim, but applicant himself admits that the guides may be made stationary and with rounded faces, which is exactly the form in Groble. Besides all this, the vertically disposed and revoluble guide roller is clearly shown in the British patent to Huppertz, cited. Hence there can be no excuse of originality or novelty in applicant's construction. The claim must be rejected on references of record and for reasons given."

As before stated, all the citations and rejections of the Patent Office were acquiesced in by Adams. Comparing the claims first presented and those finally allowed, it is difficult to see what change was made to effect a change in the mind of the examiner.

However, from an examination of the Groble-Huppertz and Brausil patents, I can discover no anticipation of the two guides of the Adams patent located in alignment with the rollers. The Groble patent shows comparatively long raised guides, located considerably out of such alignment, and on one side of the rollers. The Huppertz device shows one stop or guide located on the outside of the frame to be ornamented, corresponding, generally speaking, to complainant's outer guide. The said Brausil patent, No. 590,200, combines its guide and feeding roller in one, and the action of the disk or table in revolving tends to carry the frame out of position for moulding thereon continuously. If practicable at all, it would seem to require that it be directed by hand in order to accomplish the work. At any rate, I see nothing in any of said cited patents which, properly construed, anticipates the original Adams patent.

2. Was the guide provision of the said claims 11 to 18 of the second reissue patent comprehended in the original patent? A reissue patent must be for the same invention as the original. Walker on Patents (3d Ed.) § 233. In Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 99, 8 Sup. Ct. 38, 31 L. Ed. 100, it is stated that the term "same invention" includes "whatever invention was described in the original letters patent, and appears therein to have been intended to be secured thereby." This statement is reaffirmed in a number of cases by the Supreme Court.

In Dobson v. Lees, 137 U. S. 258, 11 Sup. Ct. 71, 34 L. Ed. 652, the court says:

"Hence the reissue cannot be permitted to enlarge the claims of the original patent by including matter once intentionally omitted. Acquiescence in the rejection of a claim, its withdrawal by amendment, either to save the application or to escape an interference, the acceptance of a patent containing limitations imposed by the patent office, which narrows the scope of the invention as at first described and claimed, are instances of such omission."

As above set out, complainant's assignor distinctly waived all claim to the single guide. Complainant claims and introduces proof to show that this was done through mistake. But a mistake as to the meaning of a disclaimer, limiting the scope of a patent, which is deliberately made to meet a requirement of the Patent Office, and which does meet such requirement, and thereby avoids an interference, is not a mistake or inadvertence, within the meaning of the statute, which may be

corrected by reissue with such disclaimer omitted. Westinghouse, etc., Co. v. Stanley, etc., Mfg. Co. (C. C.) 115 Fed. 810.

Nor am I able to see how the substance of said reissue, claims 11 to 18, was logically or actually embraced in the original patent. The purpose of Adams' two guides, as set out in the specifications, is "to limit the lateral movement of the picture frame," and, "by locating the guides just far enough apart to permit the sides of the frame to pass, they will assist in guiding the frame by the slight frictional contact caused thereby." This also appears from the several disclaimers above cited, and lines 30 to 38 of the specifications, claiming the highest results from two guides. Under all the facts of this case, it seems clear that the second reissue, claims 11 to 18, aforesaid, are not proper matter for a reissue patent.

3. In view of the foregoing, it is not necessary to pass upon the question of laches. However, bearing in mind the several rulings of the examiner, the acquiescence therein, and the further fact that defendant began the use of the machines in suit, having one guide more than two years prior to the date of the reissue patent No. 11,980, and in the absence of any evidence of fraud or intention to take advantage of complainant in the premises, I am of the opinion that complainant was guilty of such laches as will estop it from proceeding herein against defendant corporations. Hoskin v. Fisher, 125 U. S. 217, 8 Sup. Ct. 834, 31 L. Ed. 759.

There is no case made against the other defendants, and as to them the bill would have to be dismissed in any event.

There are several other features of construction involved, such as supporting devices, tables, etc., but, on a careful consideration of all the evidence, I am satisfied the matter of guides constitutes the substance of the patent in suit.

The bill will therefore be dismissed for want of equity.