**PIC INCORPORATED, Plaintiff and Counterclaim Defendant,**

v.

**The PRESCON CORPORATION, Defendant and Counterclaim Plaintiff,**

v.

**Frederic A. LANG, Counterclaim Defendant.**

**Civ. A. No. 76–432.**

United States District Court, D. Delaware.

March 5, 1980.

William J. Wier, Jr., and Robert Jacobs, Bader, Dorsey & Kreshtool, Wilmington,

Del., Robert J. Washburn, Woodcock, Washburn, Kurtz & Mackiewicz, Philadelphia, Pa., for PIC Inc. and Frederic A. Lang.

Richard P. Beck, Morris, James, Hitchens & Williams, Wilmington, Del., Paul Van-Slyke and Ben D. Tobor, Arnold, White & Durkee, Houston, Tex., for The Prescon Corp.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

■ This case is an action by plaintiff PIC Incorporated ("PIC"), alleging patent infringement by defendant The Prescon Corporation ("Prescon"). PIC is the assignee of Patent No. 3,646,748 for an invention entitled "TENDONS FOR PRESTRESSED CONCRETE AND PROCESS FOR MAKING SUCH TENDONS" which was issued to Frederic A. Lang on March 7, 1972 ("the Lang patent"). Prescon denied infringement and counterclaimed against PIC and Lang for a declaratory judgment that the patent is invalid for many reasons, including the existence of prior art and fraud on the Patent Office. Following commencement of this litigation, Lang filed an application for reissue of the Lang patent with the Patent and Trademark Office ("PTO") under 37 C.F.R. § 1.171 and plaintiff moved to stay the litigation pending the PTO's decision. By order of this Court dated August 5, 1977, plaintiff's motion for a stay was granted. The proceedings before the PTO have now been concluded; following a decision against the validity of the Lang patent by the Examiner, the PTO Board of Appeals reversed the Examiner and upheld the validity of the Lang patent over the prior art cited to it during the proceedings. In addition, the Assistant Commissioner for Patents found no fraud in the procurement of the patent, at least with regard to the two pieces of prior art he examined. PIC has moved for partial summary judgment on the issues of invalidity by reason of prior art and fraud in the procurement of the

patent, claiming that the PTO decision in the reissue application proceeding should be given preclusive effect in this Court. For the reasons set forth below, plaintiff's motion will be denied. A detailed discussion of the reissue application procedure and the facts as applied to that procedure is essential to an understanding of the holding that a result favorable to a patentee in a PTO reissue proceeding on issues of invalidity by reason of prior art and fraud is not entitled to preclusive effect in the courts.

### I. The Reissue Application Procedure: In General

In March, 1977, the Patent and Trademark Office amended its regulations concerning reissue applications and provided, *inter alia*, for limited participation by interested parties and the public in such proceedings.[1] Under these new regulations, applicants for reissue may obtain a ruling by the PTO on the validity of a patent without declaring under oath their belief that the original patent is "wholly or partly inoperative or invalid."[2] Through the use of this procedure, a patentee may now direct the PTO's attention to "prior art or other information relevant to patentability, not previously considered by the Office, which *might* cause an Examiner to deem the original patent invalid," without admitting the patent's invalidity.[3] It was hoped that this procedure would "improve the quality and reliability of issued patents."[4]

In accordance with the PTO's Manual of Patent Examining Procedures ("M.P.E.P."), applications in which questions of "fraud" or "violation of the duty of disclosure" are present are forwarded to the Assistant Commissioner for Patents. § 721.01, M.P.E.P. Resolution of the fraud issues is deferred while the Primary Examiner first considers all other issues.

As noted, the new PTO reissue regulations provide for participation by protestors against pending applications. 37 C.F.R.

---

1. 42 Fed.Reg. 5588 (1977).

2. 37 C.F.R. § 1.175(a)(4).

3. *Id.; see also* 3 Chisum, *Patents* § 15.03[1].

4. 42 Fed.Reg. 5588; *see Fisher Controls Co., Inc. v. Control Components, Inc.,* 443 F.Supp. 581 (S.D.Iowa 1977).

§ 1.291. Such parties may file with the Examiner objections to pending reissue applications which may include citations to prior art or other related information.

As originally promulgated, the reissue rules contemplated no further participation by protestors in reissue proceedings.[5] However, further guidelines relating to 37 C.F.R. §§ 1.175 and 1.291, adopted on December 12, 1978,[6] expanded somewhat the role of protestors in the reissue proceeding. A protestor may now "monitor the proceedings," file such additional papers as it considers appropriate, and request the PTO to supply it with "copies of Office actions or other documents mailed by the Office." (977 O.G. 11 at 13). Such documents will be sent to protestors at the "sole discretion of and for the convenience of" the PTO.[7] Under the 1978 guidelines, the Examiner may communicate with the protestor in writing to seek clarification and/or additional information. It is pointed out, however, that such communication normally should not be necessary where the protestor has supplied only published prior art. It is also made clear that protestors are to refrain from any oral communication with Examiners except to ask purely procedural questions, unless specifically authorized in writing by the Assistant Commissioner for Patents.

The Examiner is also given discretion to solicit the protestor's comments on responses to PTO actions submitted by patent applicants. Such an opportunity to comment is only provided, however, "where it would appear to be of benefit to the examination process and only with the approval of a Supervisory Primary Examiner."[8]

The new guidelines also provide a very limited opportunity for protestor participation in interviews with the patent Examiner and in oral argument before the Board of Appeals. Protestor participation in interviews will normally not be permitted by the Assistant Commissioner unless "special justifying circumstances exist,"[9] and in no case will a protestor be granted an interview with an Examiner without the applicant present. Under the regulations, only a patent applicant may appeal an adverse decision of the Examiner to the Board of Appeals.[10] In the proceedings before the Board, the Primary Examiner is given the opportunity to file a brief and appear at an oral hearing.[11] Protestors may likewise request permission to file a brief and appear at oral argument. The protestor's brief, however, is only to be considered by the Examiner in preparing his answering brief. Moreover, the right to participate in oral argument is granted by the Board of Appeals only if it decides that "the issues on appeal are such that protestor's participation at the hearing would be helpful."[12] However, "if appellant [reissue applicant] does not request an oral hearing, or provides timely notification to the Board and protestor that appellant will not appear, protestor will not be heard."[13] Thus, the patent applicant has the ability to prevent the protestor from appearing before the Board of Appeals.

Any *applicant* dissatisfied with the decision of the Board of Appeals may appeal to the U. S. Court of Customs and Patent Appeals or file a civil action in a district court. (37 C.F.R. §§ 1.301, 1.303). No provision is made in the PTO regulations for an appeal by a protestor who is dissatisfied with the Board's decision.

A recent review of the reissue application procedures by the Assistant Commissioner

5. 42 Fed.Reg. 5589.

6. 977 Official Gazette, U. S. Patent and Trademark Office 11 (1978) ("O.G."). These guidelines were adopted after the Primary Examiner had ruled in the Lang reissue application, and while the Board of Appeals was considering Lang's appeal. Thus, they had a minimal impact on the PTO proceeding involving the Lang patent.

7. *Id.* at 13.

8. *Id.*

9. *Id.*

10. 37 C.F.R. § 1.191.

11. 37 C.F.R. §§ 1.193(a), 1.194(b).

12. 977 O.G. 11 at 13.

13. *Id.*

indicates that more protestor participation than was originally contemplated by the PTO is being provided in accordance with the December, 1978 guidelines. However, "protestor participation has been approached cautiously because of the delay and harassment dangers and resultant expenses to the applicant." [14] Moreover, the PTO has declined to declare a reissue application proceeding a "contested case" [15] because of these same concerns, and the PTO's Manual of Patent Examining Procedures states that "the question of patentability has been uniformly looked upon as ex parte in character. It is a question between the applicant and the office on behalf of the public." [16]

## II. The Reissue Application Procedure: Ex Parte Lang

In April, 1977, Lang filed an application for reissue of the Lang patent with the PTO, along with a prior art statement that directed the PTO's attention to prior art which had not been previously cited to the PTO. Lang informed the PTO that "the majority of this material was brought to applicant's attention by the defendant in Civil Action No. 76–432." [17] Lang also supplied the PTO with all papers filed in this litigation (Doc. No. 56A, A 41), including the Opinion and Order of this Court staying the litigation pending the reissue proceeding. [18]

Lang's request for expedited consideration of his claims was granted by the Assistant Commissioner (A 73), and Prescon was given the opportunity to file a protest under 37 C.F.R. § 1.291. In so doing, the Assistant Commissioner stated, "[i]t is recognized, of course, that Prescon is under no obligation to participate in any manner in this proceeding. The decision as to whether or not to file a protest is soley [sic] within the discretion of Prescon." (A 63). At the same time, a "requirement for information" consisting of thirty detailed questions concerning the prior art cited by Lang was directed to Lang. It was required that any papers filed on behalf of either PIC or Prescon reflect service on the other party but the PTO noted that absent a protest or request from Prescon to do so, it would not supply Prescon with copies of actions by the Primary Examiner or papers originating from the PTO. Lang's answers to the PTO's request for information were filed in November, 1977. (A 75–101). Included with this response was a letter from Prescon's counsel to Lang stating that Prescon had decided not to file a protest. [19] Prescon did, however, direct Lang's attention to additional materials, including prior art, that were relevant, in its view, to the patent. Lang forwarded this material to the PTO along with his views concerning its effect on the Lang patent.

Lang's reissue application was first considered by the Primary Examiner in accordance with M.P.E.P. § 721.01 and consideration of all issues relating to "fraud" was deferred pending the completion of his analysis. (A 113). In a decision of December 30, 1977, the Primary Examiner found that the new prior art invalidated all of

14. Tegtmeyer, *The New Reissue Rules and Guidelines*, 1979 Proceedings, ABA Section of Patent, Trademark and Copyright Law 108 at 110.

15. *Id.* at 111. Under the Patent Code and PTO regulations, "contested case" proceedings provide the opportunity for testimony of witnesses, discovery, and hearings. *See* 35 U.S.C. §§ 23, 24; 37 C.F.R. §§ 1.201–1.287.

16. M.P.E.P. § 1309.02.

17. Doc. No. 56A, p. A 25 (hereinafter A __). Doc. No. 56A is the appendix to plaintiff's opening brief in support of its motion for summary judgment, and consists of excerpts from the reissue proceeding. Plaintiff has also supplied the Court with a certified copy of that proceeding. For convenience, the Court will refer to the consecutively numbered pages of the appendix. The Court has verified the accuracy of the documents included in the appendix, although it is noted that several important documents were not included. *See e. g.*, note 19 *infra*.

18. This Court's Opinion and Order also stayed all discovery, but permitted the defendant to petition the Court to lift this stay so as to take the deposition of Eugene Dabney "upon a proper showing of need." (Doc. No. 31).

19. Response to Requirement for Information Exhibit A (found in Certified Copy of PTO Reissue Proceedings).

Lang's claims. (A 117). On February 17, 1978, Lang filed a 32-page response to that decision. (A 124). Referenced in this response is an interview conducted on February 1, 1978 attended by the Primary Examiner and Lang and his attorney. This document indicates that Lang presented reasons to the Examiner which, in Lang's view, warranted favorable action on his reissue application. Also on February 17, 1978, Lang indicated to the Examiner that the deposition of Eugene Dabney had recently been taken by Prescon and that a copy would be forwarded to the Examiner as soon as it was transcribed. On March 15, the Dabney deposition and a 25-page memorandum containing Lang's views of the deposition were delivered by Lang. (A 160).

On April 24, the Examiner issued another decision. While he withdrew several of his earlier rejections of Lang's claims in light of "applicant's remarks," he still found the patent to be invalid over other pieces of prior art. (A 193–94). Once again, Lang's attorney filed a response to the Examiner's action. (A 196). This response referenced a telephone call that took place on April 28 between the Examiner and counsel in which counsel discussed with the Examiner "the fact that the action dated April 24, 1978 does not show on its face that the Primary Examiner had received and reviewed the transcript of the oral deposition of Eugene R. Dabney and applicant's paper entitled Re Dabney Deposition. . . ." (A 196). On August 10, 1978, the Primary Examiner, noting his consideration of the Dabney deposition, made his rejection of all of Lang's claims final. (A 230–32). On August 16, Lang appealed the decision of the Primary Examiner to the Board of Appeals and on October 3 he filed a 40-page brief with the Board. (A 234). This brief recounted the history of the Lang patent prosecution, described the Lang invention, analyzed all prior art considered by the Primary Examiner, and requested an oral hearing before the Board. The Primary Examiner then filed his answering brief in support of his decision (A 279) and Lang filed a reply brief

on November 16, 1978 (A 285). Lang also requested an expedited hearing and decision by the Board. Following a hearing on December 7, the Board issued its decision on January 31, 1979 and reversed the Primary Examiner's rejection of the Lang patent. (A 299).

The PTO then turned its attention to the fraud issues raised by Prescon in this litigation. It first offered Lang an opportunity to comment on "the allegations relating to fraud and/or inequitable conduct." (A 314). Lang did so on February 16, 1979. (A 315). The Assistant Commissioner then requested Lang's answers to a "Requirement for Information" with regard to these allegations. (A 338). Lang's responses and declaration were filed on April 11, along with a fresh statement by Lang's counsel in the original patent application. (A 342).

On April 20, 1979, Prescon filed a formal protest pursuant to 37 C.F.R. § 1.291. (A 364). According to Prescon, the purpose of its protest was to direct the PTO's attention to a newly-discovered reference that "is so pertinent as to be dispositive of the issue of patentability of the claims." (A 366). This reference consisted of an article in the February, 1968 issue of a publication entitled *Concrete*. Lang, in his response to the protest filed on May 10, requested that the new reference be considered by the Board of Appeals, despite Prescon's previous failure to file a timely protest and the fact that the Board's decision had already been rendered. (A 363). Prescon requested that the reference be submitted to the Primary Examiner for his consideration, in addition to the right to file and have considered briefs, the right to initiate and attend interviews with the Primary Examiner, and the right to be served with and to respond to all papers filed by Lang or the PTO.[20] On May 16, the Commissioner for Patents ordered the reference submitted to the Board of Appeals for its consideration. He authorized the Board, "*within its discretion*, to offer Applicant [Lang] an opportunity for an oral hearing and, if Applicant accepts and ap-

---

**20.** Petition for Oral Argument (found in Certified Copy of PTO Reissue Proceedings). *See* A 436.

pears, to permit Protestor to likewise appear and present oral arguments." (A 437). The remainder of Prescon's requests, except for service of all papers filed by Lang and of "office decisions relating to matters of substance," were denied. (A 437–38). The Board offered Lang an opportunity for an oral hearing with regard to the protest (A 439) but Lang declined. (A 441).

The Board of Appeals issued a supplemental decision on June 12, in which it found that the *Concrete* article "either alone or in combination with the other prior art before us [does not] provide an adequate basis for a rejection based on obviousness under 35 U.S.C. 103 . . . ." (A 444). Prescon then petitioned for reconsideration of the Board's decision, in view of a declaration by the author of the *Concrete* article, Mr. Longbottom. (A 448). Prescon again petitioned for oral argument in connection with this declaration. (A 477). Lang responded to Prescon's petitions, in part by contesting Prescon's right to request reconsideration. (A 480). Lang also refuted Prescon's substantive assertions and opposed its petition for oral argument. (A 494). The Acting Commissioner for Patents granted Prescon's request for reconsideration but denied its request for oral argument, citing PTO guidelines (977 O.G. 11) which provide for a protestor's right to oral argument only if oral argument is requested by the patent applicant. (A 498). On August 16, the Board again found no basis to modify its original decision of January 31. (A 506).

The final step in the Lang reissue proceeding was the consideration by the Assistant Commissioner for Patents of the allegations of fraud and/or inequitable conduct raised in Prescon's answer and counterclaim in this litigation. The alleged conduct was the concealment from the PTO in the original patent prosecution of a co-pending Lang patent application and a Lang Belgian patent. As noted, the Assistant Commissioner has previously requested from Lang responses to specific questions dealing with this issue. (A 338). The Assistant Commissioner also requested the Primary Examiner to determine whether the Lang Belgian patent is "*more* or *less* material than any of

the cited references of record listed in the [Lang] patent. . . ." (A 517). In a decision rendered August 30, 1979, the Assistant Commissioner found the previous U. S. Lang patent to be inapplicable to the claimed subject matter of the Lang patent. With regard to the Belgian patent, he concluded "there is no evidence of a clear and convincing nature which would necessitate the striking of this application based on the failure to bring the Belgian patent to the attention of the PTO." (A 513). The Assistant Commissioner did admonish Lang and his counsel as follows:

Although the striking of this application for failure to disclose the Lang U. S. patent and the Lang Belgian patent is unnecessary, it is apparent from the record herein that applicant and/or Counsel would have been prudent in bringing both of these patents to the attention of the office during the prosecution of applicant's original application since so doing would have avoided a great deal of work and effort on the part of all concerned. (A 513).

On September 27, 1979, this Court lifted the stay of proceedings and set a termination of discovery date of March 25, 1980. (Doc. No. 50). On November 1, Prescon moved this Court for permission to file with the Patent Office a petition urging the PTO to consider "newly discovered evidence." (Doc. No. 64). On November 9, however, the PTO officially closed the Lang reissue proceeding as the time for filing an appeal from the Board of Appeals had expired, thus mooting Prescon's motion. (A 520).

III. *The Preclusive Effect of Administrative Decisions*

PIC contends that the PTO issue proceeding should be given either *res judicata* or collateral estoppel effect with respect to this litigation, since "the parties are exactly the same as those in the Patent Office proceeding and the issues being relitigated, validity and fraud in the procurement, have already been decided in the reissue proceeding." (Doc. No. 56, at 7). PIC also contends that, in the context of this litigation, it is not necessary to distinguish between the doctrines of *res judicata* and collateral estoppel. However, as indicated by the Su-

preme Court in *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955),

> [t]he basic distinction between the doctrines of *res judicata* and collateral estoppel . . . has frequently been emphasized. Thus, under the doctrine of *res judicata*, a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

349 U.S. at 326, 75 S.Ct. at 867 (1955). *See also Gulf Oil Corp. v. Federal Power Comm.*, 563 F.2d 588, 602 (3d Cir. 1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978).

▇ The requirements for *res judicata*, in which a prior judgment acts as a bar to relitigation, are (1) a final judgment on the merits of a cause of action; (2) in a suit between the parties or their privies; (3) to a second suit involving the same cause of action. *See Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); 1B Moore's *Federal Practice* ¶ 0.405[1]. It is now well established that decisions by an administrative agency may be accorded *res judicata* effect if certain conditions are met. In *United States v. Utah Construction Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), the Court wrote:

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which

the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

384 U.S. at 422, 86 S.Ct. at 1560.

▇ The courts have also looked to this formulation to determine the collateral estoppel effect of administrative decisions. *See, e. g., Nasem v. Brown*, 193 U.S.App. D.C. 416, 595 F.2d 801 (D.C.Cir.1979); *Bowen v. United States*, 570 F.2d 1311 (7th Cir. 1978); *Consolidated Express, Inc. v. N.Y. Shipping, Inc.*, 452 F.Supp. 1024 (D.N.J. 1977). Although the requirements for collateral estoppel—the preclusion of specific issues or facts—vary somewhat from those for *res judicata*,[21] the courts require that the party against whom collateral estoppel is sought have an adequate opportunity to litigate its claims. The Supreme Court has defined this requirement as "a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time." *Blonder-Tongue Laboratories v. University of Ill. Foundation*, 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971).

In the context of the instant case, it is clear that if the PTO reissue proceeding is to have any preclusive effect, it must do so under the principle of collateral estoppel. This suit is an action by PIC alleging infringement of the Lang patent; the reissue proceeding instituted by Lang dealt only with issues of validity and, indeed, could not involve infringement. Although there is some connection between this suit and the reissue proceedings, it cannot be said they are the same "cause of action" and therefore this litigation is not barred by the doctrine of *res judicata*.[22] *See Gulf Oil*

---

**21.** *See* 1B Moore's *Federal Practice* ¶¶ 0.405[1]; 0.441[1]. Unlike *res judicata* the second litigation need not be the same cause of action as the first in order for collateral estoppel to result. The issue sought to be concluded must be the same as that involved, litigated and judicially determined in the prior action, and resolution of that issue must have been necessary to the judgment in the prior action. 1B Moore's *Federal Practice* ¶ 0.443[1]. *See also* Restatement (2d) of Judgments, Tentative Draft No. 4 § 68 (1977). Moreover, the long standing requirement that one who invokes the conclusive effect of a judgment must have been

either a party or his privy to the action in which the judgment was rendered—so-called mutuality—has been seriously eroded by the Supreme Court's decisions in *Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) and *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

**22.** Application of the doctrine of *res judicata* would also be inappropriate in this case since Prescon was not a "party" to the reissue proceeding. The lack of opportunity to participate

*Corp. v. F.P.C., supra; Eazor Express, Inc. v. Teamsters,* 388 F.Supp. 1264 (D.Del.1975).

Turning then to collateral estoppel, the critical inquiry is whether Prescon was afforded an adequate opportunity to litigate its claims in the PTO proceedings. In determining this issue, the Courts have carefully analyzed the procedures utilized in administrative proceedings. In *Bowen v. United States,* 570 F.2d 1311 (7th Cir. 1978), the court held that where parties to proceedings under § 609 of the Federal Aviation Act of 1958, 49 U.S.C. § 1429, had the right to introduce oral and documentary evidence, to cross-examine witnesses, to take depositions and serve written interrogatories, to appeal from the administrative law judge's decision to the full National Transportation Safety Board ("NTSB"), and to appeal the NTSB's decision to the Court of Appeals, the parties were estopped from relitigating issues resolved in the administrative proceeding. The Court wrote,

> While we do not mean to intimate that the availability of all these procedures is always necessary before an administrative finding may be the basis for issue preclusion, their availability [has strengthened] the case for issue preclusion.

570 F.2d 1311 at 1322–23 n.30.

A decision by the United States Civil Service Commission's Office of Federal Equal Employment Opportunity was held not to bar relitigation in a Title VII action of the issues decided, due to the inability of the parties to present live witness testimony, and to cross-examine opposing witnesses. *Nasem v. Brown,* 193 U.S.App.D.C. 416, 595 F.2d 801 (D.C.Cir.1979). Although the cause of action alleged in *Nasem,* retaliatorily motivated discharge, is one that necessarily turns on witness credibility, thereby making the right to present witnesses most

critical, the *Nasem* court held that "[a]ny deficiency in agency process that denies parties the procedural opportunity to present their claims for full agency consideration falls short of *Utah Construction.*" 193 U.S.App.D.C. 416, 422, 595 F.2d 801, 807 (D.C.Cir.1979). This Court, in *Eazor Express, Inc. v. General Teamsters Local 326,* 388 F.Supp. 1264 (D.Del.1975), held National Labor Relations Board findings to be binding in a subsequent suit where parties to the Board proceeding had the right to appear and give testimony in accordance with the Federal Rules of Evidence, and to obtain direct review of the Board's findings in the Court of Appeals. *See also Painters District Council No. 38 v. Edgewood Contracting Co.,* 416 F.2d 1081 (5th Cir. 1969) (collateral estoppel effect given to NLRB proceeding in which both parties to lawsuit were represented by counsel, and had a "full opportunity" to present evidence, examine and cross-examine witnesses, make oral arguments, and to appeal from an adverse decision).

**IV. The Collateral Estoppel Effect of PTO Determinations of Patent Validity in Reissue Proceedings**

As a minimum requirement, the procedures followed by the PTO with respect to reissue applications set forth in Sections I and II of this Opinion must comport with the requirements of *Utah Construction* and its progeny in order for the PTO findings as to prior art and fraud on the PTO to be accorded collateral estoppel effect.[23] It is clear they do not.

Several glaring deficiencies in the PTO procedures prevent the application of collateral estoppel in this case, assuming it would otherwise be permissible. It must be remembered that the nature of the reissue proceeding is recognized by the PTO to be essentially *ex parte.*[24] There is no named

on the part of Prescon also prevents the former proceeding from having any collateral estoppel effect upon the instant litigation. *See infra.*

23. It is stated that meeting the standards of *Utah Construction* is a minimum requirement because the Court expressly declines to decide whether the findings of PTO proceedings which comport with *Utah Construction* are to be accorded preclusive effect. *But see Alco Kar Kurb, Inc. v. Ager,* 286 F.2d 931 (3d Cir. 1961).

24. *See text accompanying notes 14–16 supra.* This Court respectfully differs with the characterization of the reissue application proceeding as an "extraordinary Inter Parties protest proceeding. . . ." *Corometrics Medical Systems, Inc. v. Berkeley Bio-Engineering, Inc.,* 193 U.S.P.Q. 467, 474 (N.D.Cal.1977). *Cf. General Tire & Rubber Co. v. Watson-Bowman Associates, Inc.,* 193 U.S.P.Q. 479 (D.Del.1977) ("the reissue proceeding is ex parte"). *Corometrics* has also been criticized by commenta- ·

defendant and the only way for a party other than the patentee to participate is as a protestor. The record of *Ex Parte Lang* illustrates the procedural imbalance between the patentee and the protestor in these proceedings. Lang, or his counsel, was able to discuss his application with the Examiner in an interview and telephone conversation without the presence of Prescon. In contrast, the PTO guidelines make it clear that protestors are to refrain from any oral communication with examiners except to ask purely procedural questions. When measured against Lang's opportunity to influence the Primary Examiner's decision, this procedure hardly rendered Prescon a fair opportunity to litigate its claim.

The record before the PTO is entirely a paper record. As the PTO has chosen not to deem reissue applications "contested cases," the "parties" are given no opportunity to examine and cross-examine witnesses at a hearing. The Court need not determine whether, as asserted by plaintiff, such opportunities are less critical in a proceeding designed to determine patent validity than in discharge cases. *Cf. Nasem v. Brown, supra.* It cannot be said, however, that this deficiency is insignificant. Moreover, no opportunity for discovery is provided by the PTO. Perhaps in recognition of this, several courts, while staying litigation pending a reissue application proceeding, have permitted limited discovery to continue. *See Rohm and Haas Co. v. Mobil Oil Corp.,* 462 F.Supp. 732 (D.Del.1978); *Sauder Industries, Inc. v. The Carborundum Co.,* 201 U.S.P.Q. 240 (N.D.Ohio 1978). Whether a court order permitting limited discovery cures this deficiency of the PTO proceeding need not be determined, as the Court in the instant case permitted only the taking of the Dabney deposition while the PTO proceeding was pending.

As set forth in Sections II and III, protestors may be denied the opportunity to appear at oral argument if the reissue applicant does not desire oral argument. In this case, Lang appeared at an oral hearing before the Board of Appeals when he sought to overturn the decision of the Examiner but declined subsequent oral argument when Prescon moved to reconsider the Board's decision favorable to Lang, thereby precluding Prescon from appearing. This unilateral power to determine the procedural rights of the protestor further illustrates the basic *ex parte* nature and unfairness of the proceeding for purposes of collateral estoppel.

While the absence of no one procedural safeguard is determinative, a particularly significant deficiency in the reissue proceeding is the failure to afford the protestor a right to appeal an adverse decision. In contrast, the reissue applicant may appeal from the Primary Examiner's decision to the Board of Appeals and from the Board of Appeals to the Court of Custom and Patent Appeals or a district court pursuant to 35 U.S.C. § 145. 37 C.F.R. §§ 1.301, 1.303. Restatement (2d) of Judgments, Tentative Draft No. 4 § 68.1(a) (1977) teaches:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> (a) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment by an appellate court in the initial action . . .

*See also* 1B Moore's *Federal Practice* ¶ 0.416[1].

The significance of the right to appeal becomes particularly clear in the context of this case. PIC is only able to proceed today with this litigation because Lang exercised his right to appeal in the PTO proceedings. In moving to stay this litigation pending a PTO determination of the Lang reissue application, PIC represented to the Court that

> [i]f the PTO determines the claims in suit to be invalid and will not reissue the patent, plaintiff will dedicate the original patent. . . .

---

tors. *See* Dunner and Lipsey, *The New Reissue Practice,* 61 *J.Pat.Off.Soc.* 68, 93 (1979); Dun-

ner, *Recent Developments in Patent Law,* 1978 *Pat.L.Ann.* 1, 14 (1978).

Doc. No. 26 at 10.[25] The Primary Examiner found the claims in suit to be invalid. *On appeal,* this determination was reversed and the patent held to be valid. Absent the right to appeal from the Board of Appeals decision, Prescon's ability to participate fully in a *final* determination as to the *Lang* application was severely restricted.

Thus, it becomes apparent that the procedures followed with respect to protestors in PTO reissue application proceedings do not satisfy the requirements set forth in *Utah Construction* for application of the doctrine of collateral estoppel. The lack of an opportunity to examine and cross-examine witnesses and to engage in discovery, and the differences between the applicant and the protestor with regard to the right to request oral argument before the Board of Appeals, the right to meet and discuss the application with the Examiner and the right to appeal adverse decisions precluded Prescon from having an "adequate opportunity to litigate" its claim. In so holding, the Court has analyzed the *opportunity* for Prescon to participate in the Lang application proceeding, and not the extent of Prescon's actual participation. Prescon has expressly stated that its failure to file a protest prior to late 1978 was based, in large part, upon its concern that "any participation on its part at this point in time might serve to create a res judicata situation . . . ." (Doc. No. 25 at 4; A 378). If the Court had found that the PTO proceedings satisfied the requirements of *Utah Construction,*[26] Prescon could not have defended against the application of collateral estoppel merely by not participating in the proceedings.

PIC advances several policy arguments in support of the application of collateral estoppel to reissue application proceedings.

First, it argues that the joint policies of finality and judicial economy dictate the application of collateral estoppel. The Court is not unmindful of the value of these policies but when balanced against the competing interests of "the adversariness and adequacy of the first proceeding," *Nasem v. Brown, supra,* 193 U.S.App.D.C. at 422, 595 F.2d at 807, they cannot prevail. Second, PIC contends the application of collateral estoppel is necessary to carry out the purpose of the 1977 reissue regulations. However, while the PTO has consistently emphasized the goals of *prompt* examination of reissue applications and improved quality and reliability of issued patents in connection with the new regulations, *see* 41 Fed. Reg. 43729 (1976); 42 Fed.Reg. 5588 (1977); 983 O.G. 24 (1979), it has never suggested an intention to replace the courts in determining issues of patent validity. Indeed, in connection with a proposal to provide a procedure whereby any member of the public could bring prior art patents and publications to the attention of the PTO and have the PTO rule on the validity of an issued patent in view of this information, the PTO has expressly stated, "[c]ourts would not be bound by advisory opinions. The ultimate decision as to validity would, under existing law, remain with the court. Under the proposal, however, the court would have an opportunity to consider the Office's opinion on prior art that the court otherwise would be called upon to evaluate in the first instance." 43 Fed.Reg. 59402 (1978). Thus, the holding of this Court is not contrary to the intent of the regulations governing reissue proceedings.

PIC also argues that failure to accord collateral estoppel effect to the PTO find-

**25.** This representation led my predecessor in this case, Senior Judge Caleb M. Wright, to state in his Opinion staying the litigation, "it is possible then that the PTO's action in connection with the reissue application will obviate the need for any further proceedings in this Court." *PIC, Inc. v. Prescon Corp.,* 77 F.R.D. 678, 681 (D.Del.1977). PIC's suggestion that this statement indicates the Court's support for application of collateral estoppel to a PTO determination of validity is rejected. In this same opinion, the Court stated, "[i]f the PTO concludes that the patent is still valid, all concerned will *gain the benefit of the expertise* the PTO will bring to bear on its analysis." *Id.* (emphasis added).

**26.** It is emphasized that no opinion is expressed as to whether judicial preclusion would be appropriate under these circumstances. *See* note 23 *supra.*

ings would render the PTO reissue application proceedings useless in that no incentive for resort to such proceedings by patentees would exist. The Court cannot determine whether patentees will utilize the reissue procedures available to them without benefit of judicial preclusion; that decision must be based upon the circumstances and information known to the patentee and his attorney at the time. *See generally*, Dunner and Lipsey, *The New Reissue Practice*, 61 *J.Pat.Off.Soc.* 68, 77–83 (1979).[27] However, the reissue proceeding is certainly not rendered "useless" or without effect absent the according of collateral estoppel effect to its findings. It is well-established that where the pertinent prior art invoked to invalidate a patent has been considered by the PTO, the presumption of validity is strengthened. *Aluminum Company of America v. Amerola Products Corp.*, 552 F.2d 1020 (3d Cir. 1977); *Tokyo Shibaura Electric Co., Ltd. v. Zenith Radio Corp.*, 548 F.2d 88 (3d Cir. 1976);

*National Rolled Thread Die Co. v. E. W. Ferry Screw Products, Inc.*, 541 F.2d 593 (6th Cir. 1976). Conversely, when relevant prior art has not been considered by the PTO, the presumption of validity is weakened or overcome. *Aluminum Co. of America, supra.* A PTO reissue proceeding that results in a determination of patent validity over prior art enhances the presumption of validity attached to the patent and cannot be said to be "useless."

Moreover, the reissue proceeding, as it currently exists, provides an opportunity for a patentee to obtain a determination as to a patent's validity without going through costly and time-consuming litigation. *See generally* Farabow, *The Patentee's View of the New Reissue Proceedings*, 1979 Proceedings, ABA Section of Patent, Trademark and Copyright Law 128. Thus, a patentee whose patent is held to be wholly or partly inoperative in the reissue proceeding saves considerable time and litigation expenses[28] and although a wholly favorable

---

**27.** It is noted, however, that the authors of this article recommend that patent owners file reissue applications when the alleged infringer asserts significantly new prior art materials during litigation. 61 *J.Pat.Off.Soc.* at 80.

**28.** Where the newly considered prior art "invalidates some of the claims or makes necessary the narrowing of some claims," this Court has previously surmised that "the PTO would issue a reissue of the remaining valid claims" and that "[u]pon reissue, the surrender of the original patent required by 35 U.S.C. § 251, would take effect." *General Tire & Rubber Co. v. Watson-Bowman Associates, Inc.*, 193 U.S. P.Q. 479, 482 (D.Del.1977). *See Allen v. Culp*, 166 U.S. 501, 17 S.Ct. 644, 41 L.Ed. 1093 (1897); 35 U.S.C. § 252; 37 C.F.R. § 1.178.

It is well-established that the surrender of a patent upon the granting of a reissue patent serves to extinguish the original patent, leaving the patentee only with those rights arising from the reissued patent. *Peck v. Collins*, 103 U.S. 660, 26 L.Ed. 512 (1880); *Allen v. Culp*, 166 U.S. 501, 17 S.Ct. 644, 41 L.Ed. 1093 (1897); *McCormick Harvesting Machine Co. v. Aultman*, 169 U.S. 606, 18 S.Ct. 443, 42 L.Ed. 875 (1898); *Coffield v. Fletcher Mfg. Co.*, 167 F. 321 (6th Cir.) *cert. denied*, 215 U.S. 603, 30 S.Ct. 403, 54 L.Ed. 345 (1909); *Barber Asphalt Paving Co. v. Headley Good Roads Co.*, 284 F. 177 (D.Del.1922), *aff'd*, 292 F. 119 (3d Cir. 1923). This Court has also addressed the somewhat anomalous result of a reissue proceeding that determines the new prior art invalidates the entire patent. In this situation

there would be no valid claims upon which to grant a reissue, . . . . the reissue applica-

tion would be denied, and the patentee would retain his original patent with a notation in the record of what had transpired. Thus, the patentee retains his original patent if either the new prior art invalidates the entire patent or if all the claims are still valid as originally patented.

*General Tire & Rubber Co. v. Watson-Bowman Associates, Inc.*, 193 U.S.P.Q. at 482. *See also PIC, Inc. v. Prescon Corp.*, 77 F.R.D. 678 (D.Del.1977).

While a patent may technically be retained by a patentee in such circumstances, it is most likely of no value. *See Allen v. Culp, supra*, 166 U.S. 501, 505, 17 S.Ct. 644, 645, 41 L.Ed. 1093 ("But, if the original application for a reissue be rejected, the original patent stands precisely as though a reissue had never been applied for, *unless, at least, the reissue be refused upon some ground equally affecting the original patent*.") (emphasis added) (dicta); *California Computer Products, Inc. v. Simplicity Pattern Co.*, 194 U.S.P.Q. 367, 369 (C.D.Cal. 1977) (where PTO in reissue proceeding rejected application because of inadequate disclosure, decision was affirmed by PTO Board of Appeals and Court of Customs and Patent Appeals, and Supreme Court denied certiorari, patentee was barred by collateral estoppel from relitigating validity of original patent in infringement suit. "Plaintiff cannot create a patent in this Court; he must first have one authorized by the Patent Office. Once the Court of Customs and Patent Appeals finally decides that he has no patent, this Court cannot entertain a claim of infringement.").

result is not given collateral estoppel effect in an infringement action, the presumption of validity attached to the patent is strengthened, thereby increasing somewhat the patentee's likelihood of success in that action.

In *Fisher Controls Co. v. Control Components, Inc.,* 443 F.Supp. 581 (S.D.Iowa 1977), the court outlined other potential benefits of the reissue proceeding:

> Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> The outcome of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> The cost will likely be reduced both for the parties and the Court.

443 F.Supp. at 582.

Although some of these results might accrue to the benefit of the patentee, they appear to be primarily of benefit to the Court, and are more likely to come about if alleged infringers are permitted to participate more fully in the reissue proceeding and if courts permit discovery related to the issues before the PTO to continue. *See Rohm and Haas Co. v. Mobil Oil Co., supra.* In these times of crowded court dockets, it is appealing for courts to encourage the formulation of procedures that may result in less of a judicial role in patent cases. It must be recognized, however, that to the extent that PTO reissue proceedings begin to resemble adversary judicial proceedings, the advantage to the patentee of obtaining a relatively quick and inexpensive determination from the PTO is diminished.

Where, as in the instant case, a patent is given a clean bill of health in the reissue proceeding, the reissue application is rejected as lacking statutory basis for a reissue, *see* 35

 Finally, PIC contends that as an alternative to according the PTO determination preclusive effect, the Court should review the PTO's decision under a "clearly erroneous" standard. It is well settled that the question of patent validity is one of law and is therefore not subject to the clearly erroneous standard of review. *Minnesota Mining & Mfg. Co. v. Berwick Industries, Inc.,* 532 F.2d 330 (3d Cir. 1976); *Hadco Products, Inc. v. Walter Kidde & Co.,* 462 F.2d 1265 (3d Cir.), *cert. denied,* 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972). Accordingly, plaintiff's last contention is rejected.

For the reasons set forth in this Opinion, the Court will enter an order denying plaintiff's motion for partial summary judgment.

U.S.C. § 251, and the original patent, which must accompany the reissue application, is returned to the patentee. 42 Fed.Reg. 5588 (1977); 37 C.F.R. § 1.178.